```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                          SOUTHERN DIVISION
                               LONDON
```

DARRIUS R. BEGLEY,                )
                                  )
    Plaintiff,                   )        Civil No. 09-348-ART
                                  )
v.                                )
                                  )        **MEMORANDUM OPINION**
MICHAEL J. ASTRUE,                )        **AND ORDER**
Commissioner of Social Security,  )
                                  )
    Defendant.                   )

                      \*\*\* \*\*\* \*\*\* \*\*\*

The plaintiff, Darrius R. Begley ("Begley"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner"), which denied his April 20, 2004, application for disability insurance benefits ("DIB"). Because substantial evidence supports the Commissioner's ruling, the Court denies Begley's motion for summary judgment, R. 10, and grants the defendant's, R. 11.

## BACKGROUND

Begley was 33 years old when he filed his current DIB application. Transcript ("Tr.") at 57. From 1988 to 1989, he was a temporary worker at various factory jobs, and from 2000 to 2003, he was an assembly worker at an electronic parts factory. *Id.* at 67. At this job, he stood for seven hours per day and did light lifting of product parts onto an assembly line. *Id.* at 67-68. He was terminated in 2003 because he missed work often due to paranoia. *Id.* at 67.

Begley states that he is paranoid, schizophrenic, bipolar, scared of people, and nervous all the time. *Id.* at 66. He cannot work, he claims, because his paranoia prevents him from

leaving his home. *Id.* at 67. Begley submits only one page of medical records from before he filed his DIB application and does not appear to have been treated for mental problems before then. *See id.* at 131.

Begley filed an application for DIB on April 20, 2004, alleging his disability began on September 15, 2003. *Id.* at 57-59. Psychologist Pamela Starkey examined Begley on June 17, 2004, and produced a review and residual functional capacity ("RFC") determination. *Id.* at 132-140. Begley admitted to: a history of alcohol abuse; using acid, cocaine, and "crank" (a slang word for methamphetamine) in the past; and currently using marijuana frequently. *Id.* at 135-36. Dr. Starkey diagnosed Begley with: marijuana abuse and dependence, depression, a personality disorder, and intermittent explosive disorder. *Id.* at 138. In her opinion, Begley could be ready for job training within one year with effective treatment and abstinence from all addictive substances. *Id.*

In June 2004, social work Marilyn Gabbard treated Begley's depression at Cumberland River Comprehensive Care ("CRCC"). *Id*. at 141-42. Dr. Edward Ross evaluated Begley's mental health in August 2004. *Id.* at 143-161. After reviewing his medical records, he diagnosed Begley with a personality disorder. *Id.* at 152. He found that Begley's ability to maintain attention and concentration for extended periods was moderately limited. *Id.* at 158. Dr. Ilze Sillers affirmed Dr. Ross's assessment in a November 8, 2004, report. *Id.* at 162-80.

The Social Security Administration ("SSA") denied Begley's application initially on August 11, 2004. *Id*. 46-49. From November 8 to November 12, 2004, Begley was admitted to the Appalachian Regional Healthcare Psychiatric Center for a 72-hour psycho-social

2

evaluation. *Id*. 181-249. His urine tested positive for marijuana when he arrived. *Id.* at 243. He was diagnosed with major depressive disorder ("MDD") with psychosis, and marijuana abuse. *Id.* at 182.

Begley briefly obtained employment from February to April 2005. *Id.* at 127. On April 25, 2005, he was in a car accident. *Id.* at 118. He was treated for a neck fracture and shoulder pain. *Id.* at 254-99, 327-440. He stopped working again due to these injuries. *Id.* at 487. Dr. Richard Lingreen concluded that as a result of Begley's injury and pain, he could sit or stand for only thirty minutes at a time before changing position. *Id.* at 438. In total, Begley could sit or stand with normal breaks for approximately two hours during an eight-hour day. *Id.* Begley could lift ten pounds on a frequent basis and twenty pounds infrequently. *Id.* Dr. Lingreen prescribed medication for Begley's pain management. *Id.* at 440.

In addition to these physical problems, Begley's mental health issues continued. He returned to CCRC for mental health treatment for hearing voices in January 2006. *Id.* at 304-15. Records show that he underwent treatment there until April 2006. *Id.* He reported that he still smoked marijuana daily. *Id.* at 305. Dr. Mohammad Safi diagnosed Begley with impulse-control disorder. *Id.* CCRC referred Begley to clinician Sandra Higgins, who initially assessed Begley as having schizoaffective disorder. *Id.* at 312. Dr. Vassili Arkadiev at CCRC evaluated Begley's ability to do work on July 3, 2006. *Id.* at 251-53. He found that Begley would be impaired indefinitely based on his schizoaffective disorder. *Id.* at 252.

The SSA denied Begley's request for benefits again upon reconsideration on March 11, 2005. *Id.* at 52-54. Thereafter, Begley filed a written request on May 16, 2005, for a hearing.

*Id.* at 55-56. On August 23, 2006, Administrative Law Judge Ronald M. Kayser ("ALJ") conducted a hearing at which Begley testified. *Id.* at 464-498. Begley testified that he was undergoing treatment at CCRC and taking Seroquel for his psychiatric problems. *Id.* at 476. Begley said that he quit using drugs two years before the hearing. *Id.* at 479. Begley does not perform any household chores; his wife cooks, cleans, and helps to bathe him. *Id.* at 483-84. According to Begley, he can only stand for five minutes and can only walk approximately 500 feet before a break. *Id.* at 487. His neck pain (on a scale of one to ten) since the accident is at a ten, or at a six or seven while taking hydrocodone. *Id.* at 488. The ALJ observed that Begley's hands were dirty with oil or grease as if Begley had been working outside. *Id*. at 490. Begley denied this. *Id.*

Because the parties were still waiting for some of Begley's medical records, *see id.* at 250, they agreed to reconvene after receiving them. *Id.* at 497. In the interim, Dr. Kenneth Starkey and Dr. Ahmed Abdel-Latif conducted follow-up consults based on the newly-acquired records. Dr. Starkey examined Begley on February 2, 2007. *Id*. at 441-52. He found Begley suffered from opioid dependence and borderline intellectual functioning, but that "[w]ith continued psychiatric treatment and counseling care, and more effective treatment of Mr. Begley's apparent chemical dependency problems," he could be psychologically prepared for vocational training or placement within six months*. Id.* at 448-49. Dr. Abdel-Latif performed a physical examination of Begley on February 5, 2007. *Id.* at 453-63. He concluded that Begley suffers from neck and left shoulder pain as well as arthritis. *Id.* at 456. He noted that Begley may be limited in his ability to perform jobs that require lifting more than twenty pounds or

4

repetitive movement with raising his arm above his head. *Id.*

On May 21, 2007, the ALJ conducted a second hearing. *Id.* at 499-509. Begley and vocational expert Martha Goss testified. At that time, Begley testified that he was under the continued treatment of Dr. Lingreen for pain and was taking Lortab. *Id.* at 502. He stated that he had not used marijuana since his car accident in 2005. *Id.* at 504. The ALJ presented Ms. Goss with several different hypothetical individuals and asked whether those individuals could do light work in the factory setting. All the hypothetical individuals had the same physical restrictions: they could lift twenty pounds on occasion, ten pounds more regularly, pushing and pulling limited at the upper extremities, and limited reaching. *Id.* at 506-08. The hypotheticals differed in their mental limitations. *Id.* An individual with a moderate or fair attention span and a limited ability to work well with others could perform light factory work. *Id.* at 506-07. An individual with poor or no ability to demonstrate reliability, maintain attention, concentrate, and tolerate work stresses would not be able to perform any kind of work. *Id.* at 508.

## THE ALJ'S OPINION

Following the second hearing, the ALJ issued a decision on June 11, 2007. He found that while Begley is under a disability, he is not disabled under the Social Security Act because his substance abuse disorder materially contributed to the determination of disability. *Id.* at 10-26. In evaluating Begley's claim of disability, the ALJ conducted the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. *Id.* at 16-25; *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). This analysis was modified to consider the effects that Begley's substance abuse had on his impairments and on his capacity to do work. *See Rice v. Comm'r of*

*Soc. Sec.*, 169 F. App'x 452, 454-55 (6th Cir. 2006).

First, the ALJ found that Begley has not engaged in substantial gainful activity since his alleged onset of disability. Tr. at 16. Second, he found that Begley suffers from the severe impairments of poly-substance abuse and borderline intellectual functioning. *Id*. Third, he concluded that the impairments did not meet or medically equal any listed in 20 C.F.R. pt. 404, subpt. P, app. 1, even when considering the effects of Begley's substance abuse. *Id.* at 16-19. The ALJ then determined Begley's RFC. *Id.* at 19-21. He relied heavily on the opinions of Dr. Lingreen. *Id.* at 20. Based on Begley's impairments including his substance use disorders, the ALJ determined Begley had an RFC to perform *limited* light work.[1] *Id.* at 19. When an individual can perform limited light work, he can also perform sedentary work. *Id.* The ALJ also considered the mental rigors of performing limited light work and found that Begley could meet them. *Id.* at 20-21.

Additionally, the ALJ determined that while actually under the influence of "street drugs," Begley is unable to concentrate or work at all. *Id.* at 21. Under those circumstances he would be considered disabled, but federal law prevents payment of benefits when substance abuse contributes to a disability. *Id.* at 19; *see* 42 U.S.C. § 423(d)(2)(C). If Begley abstained from substance abuse he would have the residual functional capacity to perform limited light work. Tr. at 22. He would therefore be able to perform his past relevant work and other jobs in the national and regional economy. *Id.* at 25. Thus, the ALJ found that Begley is not

---

[1] The DOT defines "light" work as "standing or working, off and on, for a total of approximately 6 hours of an 8-hour workday." Soc. Sec. Rul. 83-10p, 1983 WL 31251, at *6 (1983).

disabled.

On June 22, 2007, Begley filed his appeal of the ALJ's decision. *Id.* at 8. On September 9, 2009, the Appeals Council declined to review the ALJ's decision, *id.* at 5-7, at which point it became the final decision of the defendant. Begley now seeks judicial review in this Court.

**DISCUSSION**

Begley argues that the ALJ erred in evaluating his testimony regarding his pain, symptoms, and limitations. R. 10 at 3-4. He also argues that the ALJ erred in substituting his own opinion for a treating physician's opinion. *Id.* at 4-5. Begley's arguments lack merit.

Judicial review is limited to determining whether substantial evidence supported the ALJ's ruling. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Social Security Act provides that findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).

**I.     The ALJ's rejection of Begley's testimony**

Begley argues that the ALJ failed to provide a specific rationale for rejecting his testimony regarding his pain and other limitations. R. 10 at 3-4. The ALJ explained why he did not find Begley credible and supported this conclusion. Thus, Begley's argument fails.

Begley testified he was unable to walk more than 500 yards or sit for more than five minutes. But, the ALJ found that he was able to perform light limited work. In assessing Begley's testimony, the ALJ must decide whether either: (1) the objective medical evidence

7

confirms the severity of the alleged pain arising from the condition; or (2) the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990) (quoting *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). The objective medical evidence in the record relating to Begley's physical—rather than his mental—impairments is limited. Dr. Lingreen, who consistently treats Begley for pain, concluded that Begley could sit or stand for thirty minutes without a break during an eight-hour day. *Id.* at 438-40. Dr. Abdel-Latif also reported that although Begley suffered from neck pain he could perform light work with some restrictions. *Id.* at 456. These reports directly contradict Begley's testimony about his own physical limitations. Begley does not cite to any other evidence supporting his position. Thus, no objective medical evidence exists demonstrating that Begley has a condition expected to produce disabling pain.

Since Begley's testimony suggested a greater level of impairment than the objective medical evidence supports, tr. at 23, the ALJ considered other factors to assess credibility. *See* 20 C.F.R. § 404.1529. "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Blacha*, 927 F.2d at 230). The ALJ compared Begley's testimony about his daily activities with the ALJ's own observations of Begley at the two hearings. He observed that Begley did not wear a neck brace to either hearing although he claimed to wear one every day. Tr. at 23. He did not appear to have trouble moving

8

his neck or arms. *Id.* The ALJ also noticed that Begley's hands at the first hearing appeared covered in grease and oil, as if he had been doing manual labor. *Id.* Despite Begley's testimony that he cannot stand and that he does not often leave the house, Begley also testified that he goes to the library to use the internet. *Id.* Based on these comparisons, the ALJ did not find Begley credible.

Additionally, the ALJ went beyond his observations of Begley's ability to work to determine his credibility. *See Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988) ("In evaluating complaints of pain, the ALJ may consider the credibility of the plaintiff."). He pointed out Begley's consistent dishonesty with the ALJ and with medical professionals. Tr. at 24. For example, Begley testified under oath that he has not used marijuana, first since 2004 and then since 2005. *Id.* at 479, 504. However, he admitted to Sandra Higgins in early 2006 that he still smoked marijuana daily. *Id.* at 305. Also, he was not forthcoming with Dr. Kenneth Starkey about his history of drug use. *Id.* at 24, 443-44. As the fact-finder in SSA proceedings "the ALJ has the opportunity to observe the demeanor of a witness" and thus, "his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987) (citing *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984)). Indeed, the record clearly supports the ALJ's finding that Begley was not credible. Therefore, the ALJ properly disregarded Begley's testimony about his physical limitations and pain.

9

## II. Light weight given to Dr. Akadiev's opinion

Begley argues that the ALJ erred by substituting his own opinion for that of an expert. R. 10 at 4. Specifically, Begley argues that placing no weight on Dr. Akadiev's opinion is reversible error. R. 10 at 5. This argument fails.

As a preliminary matter, it is not clear that Dr. Akadiev is Begley's treating physician. Begley states in his motion that Dr. Akadiev treated him on three occasions. *Id.* at 4. But the only evidence in the record from Dr. Akadiev is one report, titled "Medical Source Statement of Ability to do Work-Related Activities." Tr. at 251-53; *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." (citing *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983))). Begley submits no records from visits with Dr. Akadiev. Therefore, Dr. Akadiev is not a treating physician based on the record before the Court. However, even assuming that he is a treating physician, Begley's argument still fails.

Even if Dr. Akadiev was a treating physician, the ALJ does not have to adopt all of his findings. The ALJ need only consider findings that are medical opinions. Dr. Akadiev found Begley totally disabled or impaired indefinitely. Tr. at 253. This is not a medical opinion, but a conclusion on one of the dispositive issues in the case. "Conclusory medical opinions are properly discounted as only the Commissioner can make the ultimate determination of disability." *Gant v. Comm'r of Soc. Sec.*, No. 09-5623, 2010 WL 1378427, at *2 (6th Cir. Apr.

7, 2010) (citing 20 C.F.R. § 404.1527(e)(1)). Therefore, the ALJ properly disregarded Dr. Akadiev's assessment of Begley's impairment or disability status.

Additionally, the ALJ gave "very limited weight" to Dr. Akadiev's findings of Begley's abilities and restrictions. Tr. at 17. If the doctor was a treating physician, under the reason-giving requirement, the ALJ must state "good reasons . . . for the weight" he assigned to Dr. Akadiev's opinion. § 404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley v. Comm'r of Soc. Sec*, 581 F.3d 399, 406-07 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996) ("SSR 96-2p")).

The ALJ gave several reasons to explain the weight he assigned to Dr. Akadiev's opinion. First, he did not give weight to the opinion because it "addresses results but no cause." Tr. at 17. Dr. Akadiev based his opinion on a diagnosis of schizoaffective disorder, but in no way explained how he arrived at the diagnosis or how the disorder links to the findings about Begley's functional capacity. No treatment notes accompanied the report. A treating physician's opinion should not be given controlling weight, if it is "not well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . ." *Blakley*, 581 F.3d at 406 (quoting SSR 96-2p). Without any records or explanation, there is no evidence that Dr. Akadiev's report was well-supported by any methods of testing.[2]

---

[2] Sandra Higgins's initial psychological assessment of Begley, after one session, found schizoaffective disorder based on Begley's own report to her that he was diagnosed as a schizophrenic in the past. Tr. at 311-12. This is not a reliable method of testing. If Dr. Akadiev

11

Second, the ALJ showed that the substantial evidence in the record did not support Dr. Akadiev's finding of severe limitations and schizoaffective disorder. The ALJ notes the reports from social worker Gabbard and Dr. Safi, both of whom treated Begley at CCRC and did not find schizoaffective disorder. Tr. at 17 (citing tr. at 141-42, 314-06). In fact, none of the other physicians who treated Begley at CCRC, nor the consultative psychologists who examined him, found that Begley suffered from the disorder. "[If] it is inconsistent with the other substantial evidence in the case record" a treating physician's opinion should not be given controlling weight. *Blakely*, 581 F.3d at 406 (quoting SSR 96-2p at *2).

"Even when a treating source's medical opinion is not given controlling weight . . . the weight to be given to the opinion is determined by a set of factors that guides the weight given to the medical opinion, including treatment relationship, supportability, consistency, specialization, and other factors." *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 372 (6th Cir. 2006) (citing SSR 96-2p; § 404.1527(d)). But the ALJ also noted that the medical records do not clearly show that Dr. Arkadiev ever examined Begley. Tr. at 17, 24. Thus, the ALJ could not consider these factors.

Finally, the ALJ noted that Dr. Arkadiev "completely ignor[es] the fact that Mr. Begley's psychotic episodes are drug-related." *Id*. at 17. According to Begley, this shows the ALJ disregarded Dr. Arkadiev's findings and replaced them with his own opinions of Begley's medical condition. R. 10 at 4. Begley is incorrect. In fact, the ALJ's decision to give limited

---

based his report on Sandra Higgins's assessment—which is likely, given their timing and the fact that the two worked at the same facility—then his report would be similarly unreliable.

12

weight to Dr. Arkadiev's opinion that Begley's drug use did not contribute to his impairments is supported by substantial evidence in the record. As discussed above, other consultants and physicians consistently diagnosed Begley with psychosis and chemical dependencies. Dr. Pamela Starkey and Dr. Kenneth Starkey each found that Begley could significantly improve his condition with drug abstinence and treatment. Tr. at 132-40, 441-52. Thus, the ALJ's finding that Begley's episodes stem from his drug-abuse is supported by substantial evidence. For all of these reasons, the ALJ did not err by giving Dr. Arkadiev's opinion "very limited weight."

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) The plaintiff's motion for summary judgment, R. 10, is **DENIED**;

(2) The defendant's motion for summary judgment, R. 11, is **GRANTED**; and

(3) A Judgment shall enter concurrently with this memorandum opinion and order.

This the 27th day of April, 2010.



Signed By:
*Amul R. Thapar* AT
**United States District Judge**